[No. A095124. First Dist., Div. Two. Dec. 10, 2001.]

COUNTY OF LAKE, Plaintiff and Appellant, v.
CHRISTOPHER PALLA, Defendant and Respondent.

[No. A095126. First Dist., Div. Two. Dec. 10, 2001.]

COUNTY OF LAKE, Plaintiff and Appellant, v.
DOUGLAS R. HILL, Defendant and Respondent.

[No. A095127. First Dist., Div. Two. Dec. 10, 2001.]

COUNTY OF LAKE, Plaintiff and Appellant, v.
HARRY R. ABRAM, Defendant and Respondent.

**COUNSEL**

Bill Lockyer, Attorney General, Charlton G. Holland III, Assistant Attorney General, Frank S. Furtek and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

## Opinion

**KLINE, P. J.**—The Lake County District Attorney Family Support Division (county) appeals in these three consolidated cases after the Lake County Child Support Commissioner (trial court) entered orders denying the county's requests to enter default child support judgments against Christopher Palla, Douglas R. Hill and Harry R. Abram (defendants), pursuant to Family Code section 17430.[1] These orders were based on the trial court's refusal to enter default judgments in cases in which the county has alleged paternity as a material fact of the child support case, but does not ask the court to make a judicial determination of paternity and does not explain why a judicial determination of paternity is not required.[2] As we shall explain, the trial court erred in refusing to enter the proposed default judgments simply because the county did not provide additional information regarding paternity. Accordingly, we shall reverse and remand the cases to the trial court for entry of default judgments.

### Factual and Procedural Background

None of the defendants appeared in the proceedings before the trial court, and none has filed a brief on appeal. "Accordingly, we accept the factual recitation contained in the County's opening brief, but apply the rule that the County must affirmatively demonstrate prejudicial error." (*County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1315 [93 Cal.Rptr.2d 524], citing cases; see also Cal. Rules of Court, rule 17(b).[3])

The county filed complaints alleging that each defendant and a named mother are the parents of a child named in the complaint and, in the *Palla* and *Abram* cases, that the county had provided public assistance for that child. Although the county alleged in the complaints that the defendants were the fathers of the children in question, it did not request that parentage be established.[4] The county did request that child support be established, seeking current monthly support based on the state support guidelines and presumed income, as set forth in computations attached to each complaint. In the *Palla* and *Abram* cases, it also requested reimbursement of public assistance for a period beginning one year before the date the complaint was filed.

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

[2] According to the county, the trial court also denied default requests in "a number of other[]" cases, but the county selected these three cases as representative of the issue.

[3] All further rule references are to the California Rules of Court.

[4] The relevant statutes use the terms "paternity" and "parentage" interchangeably, as we shall do in this opinion. (See, e.g., §§ 17400, subd. (a) [discussing determination of "paternity"]; 17404, subd. (a) [discussing the final determination of "parentage"].)

Attached to each complaint was a proposed "Judgment Regarding Parental Obligations," which included an order stating that the mother and father listed in the complaint are the parents of the child in question and ordering the defendant to pay a specified amount of child support monthly as well as, in the *Palla* and *Abram* cases, to reimburse the county for past public assistance provided to the child. The complaint, the proposed judgment, and an accompanying information document each contained a notice informing the defendant that the proposed judgment would be entered against him and become legally binding unless he filed an answer within 30 days of the date of service of the complaint and other documents.

A copy of the complaint, proposed judgment, and other required materials was personally served on each defendant. None of the defendants filed an answer, and the county entered defaults in each case. The county then filed with the trial court a request to enter default judgment as to each defendant.

However, after a hearing on February 15, 2001, the trial court refused the county's requests to enter default judgments in the three cases. Instead, on February 28, 2001, the trial court entered orders denying the requests for entry of default judgments. These consolidated appeals are from those February 28, 2001 orders after hearing.

## DISCUSSION

### I. *Appealability of the Trial Court's Order*

As a preliminary matter, we find that the trial court's orders are appealable, pursuant to Code of Civil Procedure section 904.1, subdivision (a)(10), which provides that an appeal may be taken from an order made appealable by the provisions of the Family Code. The relevant provision of the Family Code is section 17407, subdivision (a), which provides in relevant part: "If the Attorney General is of the opinion that a support order or support-related order is erroneous and presents a question of law warranting an appeal, or that an order is sound and should be defended on appeal, in the public interest the Attorney General may: [¶] (1) Perfect or oppose an appeal to the proper appellate court if the order was issued by a court of this state." Accordingly, this matter is subject to appellate review.

### II. *Statutory Background*

In 1974, Congress enacted title IV-D of the Social Security Act "[f]or the purpose of enforcing the support obligations owed by absent parents to their children and the spouse (or former spouse) with whom such children are

living." (42 U.S.C. former § 651; see generally 42 U.S.C. §§ 651-669b.) This "IV-D" program was intended "to recoup welfare costs from the absent parents of children being given public assistance." (*Clark v. Superior Court* (1998) 62 Cal.App.4th 576, 579 [73 Cal.Rptr.2d 53]; see also *County of Yuba v. Savedra, supra,* 78 Cal.App.4th at pp. 1317-1318 [describing tit. IV-D and legislative response to it].)

In return for receiving federal funding for public assistance, title IV-D requires the states to provide services related to the establishment, modification, and enforcement of child support obligations. (42 U.S.C. § 654(4)(A).) The California Legislature has enacted statutes designed to ensure that our state complies with its title IV-D obligations. (See, inter alia, Fam. Code, § 4002 et seq.; former Welf. & Inst. Code, §§ 11350, 11350.1, 11475.1, 11476 & 11478.2.) In 1999, the Legislature enacted a new statutory scheme that created a Department of Child Support Services within the California Health and Human Services Agency, to establish, collect, and distribute child support.[5] (Fam. Code, § 17200 et seq., Stats. 1999, ch. 478, § 1; see also *County of Yuba v. Savedra, supra,* 78 Cal.App.4th at p. 1317.) The pertinent Welfare and Institutions Code sections were repealed and replaced with Family Code sections 17400, 17402, 17404, 17406, and 17415. (Stats. 1999, ch. 478, § 1, as amended by Stats. 1999, ch. 480, §§ 13, 14, 15, 16, Stats. 1999, ch. 980, § 14.2 and Stats. 1999, ch. 653, § 15.)

Section 17400, subdivision (a), describes the duties of the local child support agency (agency), and states that the agency—in this case, the district attorney's office (see fn. 5, *ante*)—"shall have the responsibility for promptly and effectively establishing, modifying, and enforcing child support obligations, including medical support, enforcing spousal support orders established by a court of competent jurisdiction, and *determining paternity in the case of a child born out of wedlock*." (Italics added.) Section 17415, subdivision (b), further describes the agency's duties: "Upon referral from the county welfare department, the local child support agency shall investigate *the question of nonsupport or paternity* and shall take all steps necessary to obtain child support for the needy child, enforce spousal support as part of the state plan under Section 17604, and *determine paternity in the case of a child born out of wedlock*." (Italics added.) Section 17400, subdivision (i), provides: "As used in this section, 'out of wedlock' means that the biological parents of the child were not married to each other at the time of the child's conception."

Subdivision (c) of section 17400 provides: "Actions brought by the local child support agency to establish paternity *or* child support or to enforce

---

[5]The district attorney continues to handle these cases until transition to the newly established local child support agency. The transition is to be completed by January 1, 2003. (§ 17305, subd. (a).)

child support obligations shall be completed within the time limits set forth by federal law." (Italics added.) Section 17404, subdivision (a), further provides that, in any action brought by the agency "under this section . . . the issues shall be limited strictly to *the question of parentage, if applicable,* and child support, including an order for medical support. *A final determination of parentage may be made in any action under this section as an incident to obtaining an order for support.*" (Italics added.)

Section 17400, subdivision (d)(1), provides that the Judicial Council, in consultation with other entities, "shall develop simplified summons, complaint, and answer forms for any action for support brought pursuant to this section or Section 17404." The rest of section 17400, subdivision (d), describes the contents of the various forms and procedures for their use. In particular, subdivision (d)(2) provides that "[t]he complaint form shall include a notice to the defendant that the proposed judgment will become effective if he or she fails to file an answer with the court within 30 days of service," and subdivision (d)(4)(A) provides that "[t]he simplified complaint form prepared pursuant to this subdivision shall be used by the local child support agency or the Attorney General *in all cases* brought under this section or Section 17404." (§ 17400, subd. (d)(2) & (4)(A), italics added; cf. § 17306, subd. (b) [director of child support services "shall develop uniform forms, policies and procedures to be employed statewide by all child support agencies"].)

Finally, section 17430 provides, with respect to default judgments: "(a) Notwithstanding any other provision of law, in any action filed by the local child support agency pursuant to Section 17400, 17402, or 17404, *a judgment shall be entered* without hearing, without the presentation of any other evidence or further notice to the defendant, upon the filing of proof of service by the local child support agency evidencing that more than 30 days have passed since the simplified summons and complaint, proposed judgment, blank answer, blank income and expense declaration, and all notices required by this division were served on the defendant. [¶] (b) If the defendant fails to file an answer with the court within 30 days of having been served as specified in subdivision (c) of Section 17400, or at any time before the default judgment is entered, the proposed judgment filed with the original summons and complaint *shall be conformed by the court as the final judgment . . . .*" (Italics added.)

### III. *Interpretation of the Relevant Statutes and Rules of Court*

" 'Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the

purpose of the law.' [Citation.] Ordinarily, the words of the statute 'provide the most reliable indicator of legislative intent.' [Citation.] ' " 'In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose. . . .' " [Citation.] " 'The words of the statute must be construed in context, keeping in mind the statutory purpose. . . .' " ' [Citation.]" (*County of Yuba v. Savedra, supra,* 78 Cal.App.4th at p. 1320.)

## A.

■ In the present cases, the language of section 17400 et seq. clearly reflects the intent of the Legislature. First, pursuant to these sections, the local child support agency is responsible for determining paternity for children born out of wedlock. (§§ 17400, subd. (a), 17415, subd. (b).) The statutes also indicate that the local child support agency, in an action to establish child support, does not have to request that both parentage and support be established; establishment of parentage need be requested only "if applicable." (§ 17404, subd. (a); see also § 17400, subd. (c) [regarding actions brought by agency "to establish paternity *or* child support" (italics added)].) Thus, if paternity has already been established, for example, by a previous judicial determination of paternity or by the fact that the child was conceived while the parents were married to each other, the statutes make clear that the agency may request that the question of support alone be established, without any need to establish paternity.

Moreover, pursuant to section 17430, where a parent fails to respond to the complaint and summons, the proposed judgment "shall" be entered. (See *County of Yuba v. Savedra, supra,* 78 Cal.App.4th at p. 1321 [" ' "It is a well established rule of statutory construction that the word 'shall' connotes mandatory action and 'may' connotes discretionary action." [Citation.]' [Citation.]"].) The mandatory language of section 17430 means that the Legislature intended that the proposed judgment become final upon the defendant's default, "as long as that proposed judgment was prepared as required by the statute." (*County of Yuba v. Savedra, supra,* at p. 1321.)

## B.

The requirement set forth in subdivision (d) of Family Code section 17400 that the Judicial Council develop forms for use in all actions brought pursuant to section 17400 et seq. plainly indicates the Legislature's goal for uniformity in the forms used in such actions. (Cf. also Fam. Code, § 17306, subd. (b).) This goal is reflected in other statutes and rules regarding forms prescribed by the Judicial Council. Government Code section 68511, for

example, provides: "The Judicial Council may prescribe[] by rule the form and content of forms used in the courts of this state. *When any such form has been so prescribed by the Judicial Council, no court may use a different form which has as its aim the same function as that for which the Judicial Council's prescribed form is designed.* The Judicial Council shall report periodically to the Legislature any statutory changes needed *to achieve uniformity in the forms used* in the courts of this state." (Italics added.) Rule 982(a), regarding mandatory forms, further provides, in relevant part: "(1) Legal forms adopted by the Judicial Council for mandatory use are forms prescribed under Government Code section 68511 and shall, wherever applicable, be used by all the courts. [¶] . . . [¶] (5) *The court may not alter a mandatory Judicial Council form and require the altered form's use in place of the Judicial Council form.*" (Italics added.)[6]

### IV. *Sufficiency of the Complaints in These Cases*

### A.

#### 1. *Form 1299.01: "Summons and Complaint Regarding Parental Obligations"*

The complaints set forth the material facts that support the county's prayer for judgment. Relevant portions of the complaint include item 1, which requests the relief being sought for the child in question; in these cases, the county checked the box to establish support, but not the box to establish parentage. Item 2a alleges that the "parents of the child are _____ and _____ [names of mother and father]." Where paternity is to be determined in the action, item 2b is checked, which alleges that the mother has submitted a declaration of paternity. Item 2c is checked when both parents have executed a voluntary declaration of paternity, which would not require establishment of parentage in a court action. (See § 7573.) Only item 2a was completed in these cases.

Items 5 through 11 of the complaint relate to the relief the county is requesting. Item 5, if the box is checked, requests "[t]hat the court determine

---

[6]Other rules further demonstrate the exclusivity of the appropriate Judicial Council forms in cases brought pursuant to section 17400 et seq. Rule 1278 provides: "*Each form adopted or approved by the Judicial Council for use in any proceeding under the Family Code*, including but not limited to forms adopted as rules 1281-1299.74 . . . are *adopted as rules of court* under authority of Family Code section 211; article VI, section 6 of the California Constitution; and other applicable law." (Italics added.) Rule 1215, specifically applicable in family law matters, provides: "(a) *The forms of pleading and the rules by which the sufficiency of pleadings is to be determined are solely those prescribed in these rules.* Demurrers and other forms of pleading may not be used unless specifically permitted by these rules. [¶] (b) . . . *The only pleading permitted by the district attorney* to initiate an action under [former] Welfare and Institutions Code sections 11350 and 11350.1 [now sections 17400 and 17404] *is the form prescribed by rule 1299.01.*" (Italics added.)

that the persons listed in item 2 are the parents of the children as requested above." The box for item 5 was checked in two of these cases (*Hill* and *Palla*), even though the county had not requested a determination of paternity in item 1.[7]

### 2. Form 1299.13: "[Proposed] Judgment Regarding Parental Obligations"

In the proposed judgment, item 6a (which must be included in all judgments) reads: "[The court orders:] The mother and father listed in the complaint are the parents of the children named in item 6b."[8]

### B.

At the hearing on the county's request for entry of default judgment in these cases, the trial court explained that it would not enter default judgments in cases in which the county alleged paternity as an ultimate fact of the support case, but did not request a judicial determination of paternity and did not explain in the complaint why such a determination was not required in the particular case. The trial court stated that without facts in the complaint negating the court's need to determine paternity, it would be impossible for the trial court to review the complaint for sufficiency, because it would be required to assume the correctness of the county's allegations. According to the trial court, without an explanation as to why a determination of paternity was not required, it could not know whether the absence of such a request was intended or inadvertent, and would have to "blindly assume that the proposed judgment conforms with the statutory scheme." (*County of Yuba v. Savedra, supra*, 78 Cal.App.4th at p. 1324.)

The trial court also was troubled by the fact that although it was not asked to establish parentage, included in the order in the proposed judgments was the statement that "[t]he mother and father listed in the complaint are the parents of the children named in [the judgment]." This finding was inconsistent, in the trial court's view, with the fact that the county had not requested in the complaints that parentage be established.

In sum, the trial court did not believe it had the power to issue a support order if it did not know if parentage already had been established, and so suggested that the county add to the form complaint a written explanation why parentage did not need to be established, which could be done in

---

[7]This apparent inconsistency was a source of concern for the trial court. (See pt. IV.B., *post*, of this opinion for a discussion of this issue.)

[8]This order that the defendant is the parent of the child was another source of concern for the trial court. (See pt. IV.B., *post*, of this opinion for a discussion of this issue.)

paragraph 4 of the complaint, which had the designation "Other" and which had space for two lines of text.

We agree with the county that the trial court had no discretion to go beyond the statutory and rule requirements and the mandatory form pleadings, and to require that the county supplement the form complaints with an explanation as to why it was not requesting that parentage be established in these cases. The county alleged paternity as a material allegation, which must be taken as true upon the defendants' defaults. (See Fam. Code, § 17430; see also Code Civ. Proc., § 431.20, subd. (a) ["Every material allegation[9] of the complaint or cross-complaint, not controverted by the answer, shall, for the purposes of the action, be taken as true."].) Had defendants contested the county's allegations of paternity in their answers, the county would have been required to provide evidentiary facts to support their allegations of paternity. However, because the allegations were not controverted in these cases, the trial court was required to take them as true, upon defendants' defaults.[10] Hence, there was no inconsistency between the relief requested and the order in the proposed judgments finding paternity.[11]

Nothing in the statutory scheme or the rules supports the trial court's understanding that adding information to the pleadings regarding the prior establishment of parentage is necessary. The statutes do not require that parentage and support be established in the same action, if parentage has already been established previously. Moreover, review of the mandatory forms further demonstrates that the county may request that parentage be established in any given action, but is not required to do so; nor do the forms contain any requirement that the county explain why establishment of parentage is not being requested. As long as the complaints and proposed judgments were completed according to the statutory and rule requirements, the trial court had no right to demand more. (See *County of Yuba v. Savedra*, *supra*, 78 Cal.App.4th at p. 1314; see also rule 1215(a) ["The forms of pleading and the rules by which the sufficiency of pleadings is to be

[9]Code of Civil Procedure section 431.10, subdivision (a), defines a material allegation in a pleading as "one essential to the claim or defense and which could not be stricken from the pleading without leaving it insufficient as to that claim or defense."

[10]We note that there is no evidence or even allegation in the record that the county has ever attempted to mislead the court with respect to the need to establish parentage or that the county routinely requests relief inconsistent with the allegations of the complaints it files in these cases.

[11]Moreover, regarding the apparent inconsistency between the county's failure to request that the trial court establish parentage in item 1 and its request, in item 5 in the *Hill* and *Palla* cases, that the trial court determine that the two people listed in item 2 are the child's parents, item 5 requests a determination of parentage "as requested above." Since the county did not request a determination of parentage "above," item 5 is not actually inconsistent with item 1; rather it is mere surplusage.

determined are solely those prescribed in these [family law] rules."].) To permit it to do so would negate the Legislature's goal of uniformity in these actions. (See Fam. Code, § 17400, subd. (d); Gov. Code, § 68511; rule 982(a).) To the extent inclusion of additional information on the form complaint would improve the process, it is not for the trial court to make such changes to the form's requirements itself on an ad hoc basis. Any such changes must come from the Legislature.

Recently, in *County of Yuba v. Savedra, supra,* 78 Cal.App.4th 1311, the Third District Court of Appeal held, under the predecessor statutes to section 17400 et seq., that the trial court had erred in requiring a "prove-up" hearing regarding the defendant father's income before entering a default judgment for the amount of support requested. The *Savedra* court concluded that "the trial court had no discretion to ignore the clear language of the statute, or to read into the statute a requirement that a 'prove-up' hearing be held. As long as the County's action proceeded in accordance with the appropriate statutes and guidelines in determining the proper level of child support in the proposed judgment, nothing more is required." (*County of Yuba v. Savedra, supra,* at p. 1314.) The court did observe, however, that "a court asked to enter a judgment brought pursuant to a particular statutory scheme is entitled to determine whether the judgment does conform to [the] statutory scheme. The [trial] court is not required to blindly assume that the proposed judgment conforms with the statutory scheme. [Citation.] Any such assumption would be an abdication of the court's responsibility." (*Id.* at p. 1324.)[12] In the present situation, the proposed judgments, on their face, conformed with the relevant statutory and rule requirements; the trial court's attempt to go beyond these requirements was improper.

Because we find that the complaints in these cases were sufficient to state a cause of action, having been completed in compliance with both the statutory scheme and the pertinent rules, including utilization of the mandatory forms, we shall reverse the trial court's orders denying the requests for entry of default judgments. On remand, the trial court shall enter the default judgments requested by the county.

---

[12]The county notes that the present cases differ somewhat from *County of Yuba v. Savedra, supra,* 78 Cal.App.4th 1311, in that the issue is not so much whether additional proof of an element of the cause of action, other than that required by statute, must be provided on demand by the court, but, rather, "whether the mandatory form pleadings as developed and promulgated by the Judicial Council are sufficient to state a cause of action, or whether the pleading (complaint) must be amended *on demand by the court,* where the defendant has not filed an answer and where a default judgment for the relief prayed by the County would otherwise issue."

## DISPOSITION

The orders are reversed and the cases are remanded to the trial court for proceedings consistent with this opinion.

Haerle, J., and Ruvolo, J., concurred.